UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

TZVEE WOOD and ANDREA MALESTER,

                         Plaintiffs,

             -against-

GENERAL MOTORS CORPORATION, *et al.*

                         Defendants.

------------------------------------------------------------------x

**MEMORANDUM &
ORDER**

08 CV 5224 (PKC) (AKT)

PAMELA K. CHEN, United States District Judge:

Currently pending before the Court is Defendants' motion to dismiss Plaintiffs' Amended

Complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the Court

grants Defendants' motion.

## BACKGROUND

The Court presumes the parties' familiarity with the protracted history of this case, which

is detailed in the Court's prior orders. (*See* Dkts. 50, 52, 74.) Briefly, however, *pro se* Plaintiffs

Tzvee Wood and Andrew Malester (together, "Plaintiffs") originally commenced this action on

December 29, 2008 against General Motors Corporation ("GM"), Hempstead Lincoln-Mercury

Motors ("HLM") car dealership, HLM chairman or chief executive officer John Billard

("Billard"), Karp Automotive Inc. ("Karp"), Dave Nicholson, Dan Gippert, and ten John and

Jane Does (collectively, "Defendants"), asserting a variety of federal and state law claims in

connection with the sale and service of an allegedly defective Saab vehicle. The initial complaint asserted claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*; the Magnuson−Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, as well as state and common law, including claims for, *inter alia*, breach of warranty, fraud, and false advertising.

After Karp filed an answer to the complaint on May 29, 2009 (Dkt. 15), defendants HLM, Billard, and Karp filed a motion to dismiss (Dkt. 32). Plaintiffs filed a cross−motion to amend the complaint. (Dkt. 44). On August 23, 2010, Magistrate Judge A. Kathleen Tomlinson issued a Report & Recommendation ("R&R") concluding that the motion to dismiss all federal claims should be granted, but with leave for Plaintiffs to correct deficiencies in their initial pleading. (Dkt. 50.) District Judge Joseph F. Bianco, to whom this case previously was assigned, adopted Judge Tomlinson's R&R on September 15, 2010. (Dkt. 52). Plaintiffs subsequently filed the instant Amended Complaint on January 18, 2011, which is eighty pages in length and largely alleges the same factual background as the original complaint.[1] (Dkt. 59−1 & 59−2 ("Am. Compl.")) The underlying allegations of this action are set forth in Judge Tomlinson's R&R. Any new allegations in the Amended Complaint are discussed in this Memorandum and Order.

This case concerns Plaintiffs' purchase of a certified pre−owned 2003 Saab 9−5 Aero SportWagon, which was manufactured by GM, from HLM and Billard in January 2004. (Am.

---

[1] The caption of the Amended Complaint adds several defendants, including General Motors Company, Saab Cars North America Inc., Saab Automobile AB, and IBM-MINACS. Plaintiffs have not, however, served the Amended Complaint on these newly-named defendants. (*See* Dkts. 71, 74.) Plaintiffs also have not served Nicholson and Gippert with either the original complaint or the Amended Complaint. (Dkt. 14, 59.) Additionally, the Court previously stayed this action as against GM under 11 U.S.C. § 362 in light of GM's bankruptcy filing. (*See* Dkts. 19 & 50 at 1 n.1.) Plaintiffs' case thus proceeds only against the HLM, Karp, and Billard, the only defendants served with the Amended Complaint. (*See* Dkts. 58-59.)

Compl. ¶¶ 5, 12−13, 19, 75−76).  Plaintiffs allege that GM, HLM, and Billard each made fraudulent misrepresentations regarding the fitness and specifications of the vehicle, particularly with respect to the load capacity of the vehicle suspension system.  (*Id.* ¶¶ 16−18, 30−31, 46−49, 53.)  According to Plaintiffs, the Saab 9−5 model "contained a defect that causes the rear suspension to sag excessively under load and/or permanently fail under load," causing "dangerous situation[s]" such as tire or suspension failures.  (*Id.* ¶¶ 77, 113.)  Following Plaintiffs' purchase of the vehicle, GM, HLM, and Karp serviced the vehicle on numerous occasions in connection with the suspension defect and a rear tire blowout.  (*Id.* ¶¶ 21, 24−27, 54−55.)  Plaintiffs allege that Karp and GM misrepresented in their service records that there was no design defect, and failed to correct the underlying defect.  (*Id.* ¶¶ 55−56, 66−68.)

The Amended Complaint additionally alleges that GM, HLM, Billard, and Karp deceptively refused to repair vehicle defects covered by the vehicle warranties (*id.* ¶¶ 33−34, 62−64), that GM and Saab entities misled consumers regarding warranty coverage (*id.* ¶¶ 36, 42, 65), and that GM and successors created a faulty warranty support structure (*id.* ¶ 50).  Plaintiffs contend that GM and successors "committed fraud by offering warranties with the intention to pay as little as possible on said warranties by among other things controlling and manipulating facts and unduly burdening both its customers and dealers with the burden of diagnostic costs." (*Id.* ¶ 35).  GM and its successors, according to Plaintiffs, wrongfully denied payment to dealerships for covered repairs, leading dealerships to deny coverage on the basis.  (*Id.* ¶ 45.)

In addition, Plaintiffs seek to represent a class of individuals who purchased or leased a Saab 9−5 with the same suspension defect, citing to consumer complaints posted on a website created by Plaintiff Wood.  (*Id.* ¶¶ 102, 118−19.)

The Amended Complaint asserts thirteen causes of action primarily under New York law for breach of contract, breach of warranties, fraud, false advertising, and unjust enrichment. Plaintiffs also assert a federal claim under civil RICO.

*LEGAL STANDARDS*

Defendants bring this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim. A claim must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," *id.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)), in which case, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists'[,]" *id.* (quoting *Makarova*, 201 F.3d at 113).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a plaintiff's failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a 12(b)(6) motion to dismiss, a district court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor

of the plaintiff. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006). The liberal notice pleading standard of Rule 8(a) only requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 at 555. Under Rule 8(a)(2), the complaint need not set forth "detailed factual allegations," but the plaintiff must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 555 U.S. at 557). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 at 555. A complaint should be dismissed where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible[.]" *Id.* at 570.

Because Plaintiffs are proceeding *pro se*, the Court must construe Plaintiffs' *pro se* Amended Complaint to raise the strongest arguments it suggests. *See Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013).

## DISCUSSION

Plaintiffs' Amended Complaint invokes the Court's jurisdiction pursuant to 28 U.S.C. § 1331, which confers jurisdiction for civil actions arising under federal law, and 28 U.S.C. § 1332, for civil actions where there is a diversity of parties and the amount of controversy exceeds $75,000.00. (Am. Compl. ¶¶ 103, 105.) Plaintiffs also rely on 28 U.S.C. § 1367 for supplemental jurisdiction over their state and common law claims. (*Id.* ¶ 104.)

As an initial matter, Plaintiffs cannot premise jurisdiction over this action on 28 U.S.C. § 1332. Section 1332 requires complete diversity of parties such that no plaintiff is a citizen of the same state as any defendant. *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 553

(2005). Complete diversity clearly is lacking in this action since Plaintiffs Wood and Malester and Defendants HLM, Billard, and Karp are all citizens of New York for jurisdictional purposes. (Am Compl. ¶¶ 81−82, 87−89.) Plaintiffs therefore must rely on Section 1331 to establish this Court's jurisdiction. Whether Plaintiffs may invoke Section 1331, in turn, depends on whether Plaintiffs' Amended Complaint has sufficiently pled a violation of RICO, the sole federal cause of action at issue. (*See id.* ¶¶ 103, 339−97.)

Based on a review of the Amended Complaint and the relevant law, the Court determines that Plaintiffs have failed to plead facts sufficient to state a claim under RICO and therefore federal question jurisdiction is lacking over this case. Plaintiffs' federal claims therefore must be dismissed with prejudice.[2]

## I.  Plaintiffs' Civil RICO Claim

RICO was enacted to "'prevent organized crime from infiltrating America's legitimate business organizations.'" *Manley v. Doby*, 12 CV 4835, 2012 WL 5866210, at *3 (E.D.N.Y. Nov. 19, 2012) (quoting *Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361, 371 (E.D.N.Y.2002)). The Act contains a criminal provision, *see* 18 U.S.C. § 1962, and a civil provision, *see* 18 U.S.C. § 1964. The civil provision permits the recovery of treble damages and reasonable attorneys' fees for any person who is "injured in his business or property by reason of a violation of" the criminal provision. 18 U.S.C. § 1964(c).

---

[2] Plaintiffs filed a cross-motion to amend the Complaint in opposing Defendants' motion. (Dkts. 84-85). Having previously denied Plaintiffs' request for leave to file a second motion to amend by Order dated March 27, 2014, the Court declines to now consider Plaintiffs' improper motion. The Court additionally observes that Plaintiffs already have been afforded an opportunity and ample time to amend their pleadings over the seven years that this case has been pending, and that any further amendment would likely be futile in light of Plaintiffs' continued failure to state a claim under federal law.

To establish a civil RICO claim, "a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)). A RICO plaintiff thus has two pleading burdens. First, a plaintiff "must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, commonly known as 'criminal RICO.'" *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). To satisfy this burden, the plaintiff must allege the following "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id.* (quoting 18 U.S.C. § 1962(a)−(c)). A plaintiff must adequately allege these seven elements "before turning to the second burden−*i.e.*, invoking RICO's civil remedies." *Id.* (citation omitted). To satisfy the second burden, a plaintiff "must allege that he was 'injured in his business or property by reason of a violation of section 1962.'" *Id.* (quoting 18 U.S.C. § 1964(c)). Section 1962(d) makes it unlawful for any person to conspire to violate the substantive provisions of RICO.

A plaintiff's burden is high when pleading civil RICO allegations. "Courts look with particular scrutiny at claims for a civil RICO, given the statute's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *Spiteri v. Russo*, 12 CV 2780, 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013); *see also Purchase Real Estate Grp., Inc. v. Jones*, 05 CV 10859, 2010 WL 3377504, at *6 (S.D.N.Y. Aug. 24, 2010) ("courts should look 'with particular scrutiny' at civil RICO claims to ensure that the

RICO statute is used for the purposes intended by Congress") (quoting *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 397 (S.D.N.Y.2000)).

Here, Plaintiffs seek damages and equitable relief pursuant to Section 1964 for violations of 18 U.S.C. § 1962(a)−(d). (Am. Compl. ¶ 340.)

**A. Pattern of Racketeering Activity and Predicate Acts**

"Racketeering activity" encompasses, among other things, any act indictable for crimes enumerated under 18 U.S.C. § 1961(1)(B), which include, for purposes relevant to this case, acts of extortion and mail and/or wire fraud. A RICO pattern of racketeering activity "must consist of two or more predicate acts of racketeering." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013); *see Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (to establish a "pattern" of racketeering activity, a plaintiff must plead "at least two predicate acts, [and] show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity") (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "Predicate acts are 'related' for RICO purposes when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Schlaifer Nance*, 119 F.3d at 97 (quoting *H.J.*, 492 U.S. at 240).

1. Mail and Wire Fraud

Where the alleged predicate acts sound in fraud, including mail and/or wire fraud, they must be pled with particularity under Fed. R. Civ. P. 9(b), and a plaintiff must allege facts giving rise to a strong inference of fraudulent intent. *Lundy*, 711 F.3d at 119 ("On a motion to dismiss a RICO claim, [p]laintiffs' allegations must also satisfy the requirement that, [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.")

(alteration in original) (internal quotations and citation omitted). Allegations failing to specify "the time, place, speaker, and sometimes even the content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b)." *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986); *see also Wanamaker v. Columbian Rope Co.*, 740 F.Supp. 127, 140 (N.D.N.Y.1990) (in order to satisfy Rule 9(b), a plaintiff pleading mail and wire fraud violations must specify "[(1)] precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and person responsible for making (or, in the case of omissions, not making) the same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud") (internal quotations and citation omitted).

In their original complaint, Plaintiffs based predicate acts of racketeering activity on mail and wire fraud, asserting that Defendants engaged in a racketeering scheme whereby they charged for vehicles and or warranties, collected payment, then wrongfully denied valid claims under the warranties. (Compl. ¶ 226.) Judge Tomlinson had determined that Plaintiffs' allegations in their original complaint did not adequately plead a predicate act or a pattern of racketeering activity because Plaintiffs did "not delineate[], with adequate particularity, the specific circumstances of how the mail and wire fraud of each defendant advanced the larger fraudulent scheme," nor did Plaintiffs "provide any specific factual allegations that support the different Defendants' intentional or knowing participation in the scheme." (Dkt. 50 at 10−11.) The Amended Complaint re−alleges the same racketeering scheme to defraud customers of warranty rights and retain funds from denied warranty claims, and expands on its allegations of predicate acts of mail and wire fraud. (Am. Compl. ¶¶ 120, 345, 350−52, 359−63, 369−70.) Plaintiffs' new allegations regarding mail and wire fraud, however, largely concern GM, against

which this case is stayed, or GM and Saab entities, which were never served with the Amended Complaint. (*See id.*¶¶ 348, 359−64, 369.)[3]  Like the original complaint, the Amended Complaint is devoid of any allegations plausibly alleging that Defendants HLM, Billard, and Karp knowingly engaged in a "fraudulent scheme" and used the mail or wires "in furtherance of the [fraudulent] scheme." *See Lundy*, 711 F.3d at 119.  The Amended Complaint is conspicuously lacking any particularized allegations regarding any fraudulent statements by HLM, Billard, or Karp via mail or wire, much less the time and place they were made, the content of these statements or the manner in which they misled Plaintiffs, and what Defendants obtained as a consequence of their misrepresentation.

For instance, Plaintiffs fail to plead that the alleged fraudulent misrepresentations HLM and Billard made regarding the fitness and specifications of Plaintiffs' car were made via mail or wire, or the particulars such as timing and content of these statements.  (Am. Compl. ¶¶ 16−18, 30−31, 46−49, 53.)  With respect to Plaintiffs' general assertion that Defendants together "have caused or conspired to cause the transmission of 'forged' documents through the mail and/or by wire" in furtherance of "[a] scheme to defraud persons warranty rights and retain funds from denied warranty claims" (*see id.*¶ 369), the Amended Complaint contains no allegations identifying any "forged" documents, who transmitted them, or specifying when or how they were transmitted, their contents, and the manner in which they misled Plaintiffs.

---

[3] In any event, Plaintiffs' allegation that the Saab and GM entities "designed a warranty system where the dealers are not compensated for diagnostics, but rather only for repairs" (Am. Compl. ¶ 348) is unsupported by factual particulars to adequately plead that those entities engaged in mail or wire fraud.  Nor can Plaintiffs establish mail or wire fraud based on the alleged February 28, 2007 letter from GM and/or Saab to Plaintiff Wood regarding their review of Plaintiffs' concerns regarding the vehicle suspension, and setting forth GM's and/or Saab's conclusion that the vehicle was operating as designed. (*Id.* ¶¶ 120, 359-61.)  Other than suggesting in a conclusory fashion that Saab already knew of defects in Saab vehicles, Plaintiffs have failed to explain with particularity how the letter misled Plaintiffs, what Defendant gained from any misrepresentations, or how the letter was part of a larger scheme to defraud.  (*Id.* ¶¶ 359-61.)

In short, Plaintiffs have failed to heed Rule 9(b)'s instruction to plead with particularity facts giving rise to a strong inference of fraudulent intent. Accordingly, Plaintiffs' Amended Complaint again fails to sufficiently plead a predicate act based on mail and wire fraud.

## 2. Extortion

Plaintiffs also have failed to adequately plead a predicate act of extortion. (*See* Am. Compl.¶¶ 353−58.) State law extortion and Hobbs Act violations constitute "racketeering activity" for purposes of establishing RICO liability. *United States v. Larson*, 807 F. Supp. 2d 142, 151 (W.D.N.Y. 2011) (citing 18 U.S.C. § 1961(1)). Federal extortion is defined under the Hobbs Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Sekhar v. United States*, 570 U.S. ——, ——, 133 S.Ct. 2720, 2723 (2013) (quoting 18 U.S.C. § 1951(a)). "The elements of a claim for extortion under the Hobbs Act are that the defendant (1) induced [the victim], with [the victim's] consent, to part with property, (2) through the wrongful use of actual or threatened force, violence or fear (including fear of economic loss), (3) in such a way as to adversely [a]ffect interstate commerce." *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 478 (E.D.N.Y. 2011) (citations and internal quotation marks omitted); *see also Flores v. Osaka Health Spa, Inc.*, 474 F.Supp.2d 523, 529 (S.D.N.Y. 2007) ("A private individual commits extortion under the Hobbs Act by obtaining or attempting to obtain property from another party by the use or threatened use of force, violence or fear.") (citing *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404–09 (2003)). The Hobbs Act "leaves open the cause of the fear" inducing a party to consent to part with property and does not require that such fear be "created by implicit or explicit threats." *United States v. Gotti*, 459 F.3d 296, 333 (2d Cir. 2006) (internal quotation marks omitted). "What is required is evidence that the defendant knowingly and

willfully created or instilled fear, or used or exploited existing fear with the specific purpose of inducing another to part with property." *United States v. Coppola*, 671 F.3d 220, 241 (2d Cir. 2012).

Similarly, New York Penal Law § 155.05 states that "[a] person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him fear . . . ." N.Y. Penal Law § 155.05(e). Thus, extortion under New York law requires the particular element of forcing a person to surrender property by instilling fear. *See, e.g.*, *United States v. Delano*, 55 F.3d 720, 726−27 (2d Cir. 1995); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1131 (E.D.N.Y. 1992).

Here, the allegedly extortionate behavior is that by refusing to honor valid warranties, Defendants subjected consumers to fear "that a car might fail leaving one stranded[,]" thus forcing consumers to choose between "driv[ing] a broken car or pay . . . to fix [the car] and try to sue to recover later[.]" (Am. Compl. ¶¶ 353−55.) First, it is doubtful that any fear arising out of potential car failure is the kind of fear contemplated by federal or state extortion statutes. These laws contemplate fear of force, violence, economic loss, or other material harm. *See* 18 U.S.C. § 1951(a); N.Y. Penal Law § 155.05 (e) (listing prohibited means of instilling fear). Second, Plaintiffs' allegations are insufficient to plausibly plead that Defendants "knowingly and willfully created or instilled fear" of car failure, or that such fear induced the wrongful transfer of property. Plaintiffs also have not alleged, as required for a Hobbs Act violation, that Defendants actions adversely affected interstate commerce. *See Ascentive*, 842 F. Supp. 2d at 478. Consequently, Plaintiffs have failed to sufficiently allege the predicate act of extortion required

under the federal and state RICO laws in order to survive a motion to dismiss pursuant to Rule 12(b)(6).

## B. RICO Enterprise

A RICO enterprise under Section 1961(4) includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Defendants alleged to be members of the enterprise unit must 'share a common purpose to engage in a particular fraudulent course of conduct' and work together to achieve their goal." *Lubin v. Dubin*, 13 CV 6619, 2014 WL 794313, at *6 (E.D.N.Y. Feb. 24, 2014) (quoting *First Capital Asset Mont. Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004)). A plaintiff must also plead that each defendant participated in the "operation or management" of the enterprise. *First Capital*, 385 F.3d at 175–76. This requires a showing that each had "some part" in "directing the affairs of the enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). While each defendant need not have primary responsibility for the functioning of the enterprise, each must, at least, have some part in directing the affairs of the alleged unit. *See DeFalco*, 244 F.3d at 309.

An association−in−fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" which is "proved by evidence of ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Where a complaint alleges an association−in−fact enterprise, courts in this Circuit look to the "hierarchy, organization, and activities" of the association to determine whether "its members functioned as a unit." *First Capital*, 385 F.3d at 174 (citations and quotation marks omitted); *see Lubin*, 2014 WL 794313, at *6.

Section 1962(c) prohibits conducting or participating in the affairs of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c); *see DeFalco*, 244 F.3d at 306 ("to establish a violation of 18 U.S.C. § 1962(c), a plaintiff must establish that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce") (citations omitted).

Judge Tomlinson previously found that Plaintiffs' original complaint did not sufficiently allege the enterprise element of their RICO claims because Plaintiffs "fail[ed] to assert even the most basic facts evidencing how each Defendant was in fact associated with the enterprise or how Defendants functioned as a unit." (Dkt. 50 at 12.) Plaintiffs' Amended Complaint does not cure this fatal defect, and alleges only that "Defendants constitute an enterprise" under 1961(4) or alternatively "formed an association−in−fact for the purpose of depriving Plaintiffs of their warranty rights" and that "[t]his enterprise was engaged in, and its activities affected, interstate commerce." (Am. Compl. ¶¶ 366−68.) Except for the conclusory allegation that HLM, Billard, and Karp collectively "operated the maintenance of the illusion of the bumper−to−bumper warranty" (*id.* ¶ 389), Plaintiffs have not alleged any facts regarding HLM's, Billard's, or Karp's responsibility or role in directing the affairs of the alleged enterprise. Such conclusory allegations, unsupported by any facts showing how Defendants improperly functioned as a unit, are still insufficient to allege the "enterprise" element of Plaintiffs' RICO claims or, more specifically, that Defendants participated in the enterprise in violation of 18 U.S.C. § 1962(c). Moreover, Plaintiffs' allegations that the GM and Saab entities foisted costs on dealers and wrongfully denied reimbursement for repairs covered by vehicle warranties sold by GM and

Saab tend to contradict any claim that Defendants worked together to create a common goal. (*See* Am. Compl. ¶¶ 35, 45, 50, 64.)

In sum, Plaintiffs have failed to allege facts sufficient to survive a motion to dismiss their RICO claim under Section 1962(c).

### C. Distinct Injury

#### 1. Injury under Section 1962(a)

Section 1962(a) prohibits investing income from a pattern of racketeering activity in an enterprise. 18 U.S.C. § 1962(a). To state a claim under Section 1962(a), a plaintiff must allege: "(1) that a defendant received income from a pattern of racketeering activity; (2) invested that income in the acquisition of a stake in, or establishment of, an enterprise distinct from the one from which the income was derived; and (3) that the plaintiff suffered an injury flowing from this reinvestment of racketeering income distinct from any injury suffered because of the commission of the original predicate acts of racketeering activity." *Leung v. Law*, 387 F. Supp. 2d 105, 120 (E.D.N.Y. 2005); *see Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990) (under Section 1962(a), the plaintiff "must allege injury from the defendant's investment of the racketeering income").

"Subsection (a) . . . focuses the inquiry on conduct different from the conduct constituting the pattern of racketeering activity. After there have been sufficient predicate acts to constitute such a pattern, what is forbidden by subsection (a) is the investment or use of the proceeds of that activity to establish or operate a commerce–affecting enterprise." *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 321 (2d Cir. 2011). The plaintiff "must show injury caused not by the pattern of racketeering activity itself, but rather by the use or investment of the proceeds of that activity." *Id*. Thus, "a plaintiff must allege an injury resulting from the defendant's investment

of racketeering income in an enterprise (i.e., an 'investment injury'), separate and apart from any injury caused by the predicate acts themselves." *OSRecovery, Inc. v. One Groupe Int'l., Inc.*, 354 F. Supp. 2d 357, 371 (S.D.N.Y.2005) (citing *Ouaknine*, 897 F.2d at 83; *Stolow v. Greg Manning Auctions, Inc.*, 258 F. Supp. 2d 236, 245−46 (S.D.N.Y. 2003)); *see Falise v. Am. Tobacco Co.*, 94 F.Supp.2d 316, 349 (E.D.N.Y. 2000) ("For civil RICO actions alleging violations of section 1962(a), 'the plaintiff [must] allege a 'use or investment' injury that is *distinct* from the injuries resulting from predicate acts.'") (quoting *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063 (2d Cir. 1996)) (emphasis in *Falise*).

With respect to the original complaint, Judge Tomlinson found that Plaintiffs had failed to allege the requisite injury under Section 1962(a) because the original complaint contained no factual allegations that the injury Plaintiffs suffered resulted from the investment of racketeering income, as opposed to the alleged predicate acts of mail and wire fraud. (Dkt. 50 at 13−14.)

Plaintiffs' Amended Complaint fares no better. Plaintiffs allege that Defendants operated their warranty scheme by "setting aside insufficient funds from product and service revenue" and investing "the retained investment racketeering income in furthering the enterprise operations . . . including unlawfully denying warranty claims." (Am. Compl. ¶¶ 371−72.) Plaintiffs further contend that Defendants' retained investment allowed GM to remain out of bankruptcy, allowing the RICO enterprise to continue. (*Id.* ¶ 373.) While far from clear, Plaintiffs' allegation regarding Defendants' funding mechanism for the purported enterprise—setting aside insufficient funds from general product and service revenue—does not establish that Defendants received income from a pattern of racketeering activity, as required by 1962(a). Plaintiffs' other allegations fail to identify any reinvestment of racketeering income by Defendants HLM, Billard, and Karp, or explain how Plaintiffs were injured as a result of that reinvestment. Insofar as

Plaintiffs allege that the investment of racketeering proceeds allowed Defendants to continue a RICO enterprise that fraudulently denied warranty claims, this allegation does not state any unique harm from the investment of racketeering−generated funds, distinct from the injury caused by racketeering activity itself. *See Globe Wholesale Tobacco Distribs. Inc. v. Worldwide Wholesale Trading Inc.*, 06 CV 2865, 2007 WL 2826630, at *5 (S.D.N.Y. Sept. 28, 2007) (dismissing plaintiff's Section1962(a) claims because "the complaint does not allege any facts to support an inference that the plaintiff suffered an investment injury distinct from any injury suffered as a result of the predicate acts").

2. Injury under Section 1962(b)

Section 1962(b) prohibits the acquisition or maintenance of an interest in an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(b). "[T]o state a claim under Section 1962(b), a plaintiff must allege that he suffered an injury resulting from the defendant's acquisition or maintenance of its interest (i.e., an 'acquisition or maintenance injury'), as distinct from an injury caused by the predicate acts alone." *OSRecovery*, 354 F.Supp.2d at 371−72 (citing *Discon*, 93 F.3d at 1062−63; *Stolow*, 258 F.Supp.2d at 246).

Plaintiffs' Amended Complaint explains that "Defendants collectively maintained control of otherwise financially shaky jobs and corporate entities by racketeering together to continue to sell cars and pay minimally on warranties[,]" and that Karp specifically singled out Plaintiffs by banning them from the dealership. (Am. Compl. ¶¶ 342, 373−78.) These barebones and vague allegations fail to plead facts that Defendants had acquired or maintained control in the alleged enterprise through a pattern of racketeering activity. Moreover, these allegations do not establish any injury suffered by Plaintiffs that is distinct from the injury caused by the predicate acts. *See*

*Discon*, 93 F.3d at 1062−63 (dismissing Section 1962(b) claim because plaintiff failed to "allege a 'use or investment injury' that is distinct from the injuries resulting from predicate acts").

Accordingly, Plaintiffs' Section 1962(a) and (b) claims are dismissed.

### 3. RICO Conspiracy

Plaintiffs also allege that Defendants violated 18 U.S.C. § 1962(d) by conspiring to commit RICO violations. (Am. Compl. ¶ 344). Section 1962(d) which makes it "unlawful for any person to conspire to violate any of the provisions of" Sections 1962(a), (b), or (c). 18 U.S.C. § 1962(d); *see United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997) (to establish the existence of a RICO conspiracy, a plaintiff must prove "the existence of an agreement to violate RICO's substantive provisions") (internal citation omitted).[4] Thus, a plaintiff must allege that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999). As to the "agreement" requirement, "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). "Although a plaintiff is not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) in pleading a RICO conspiracy, a RICO conspiracy claim 'should be more than a conclusory add−on at the end of a complaint.'"

---

[4] It appears unsettled whether a civil RICO conspiracy claim is dependent on the plaintiff successfully alleging a substantive civil RICO offense. *Compare D. Penguin Bros. v. City Nat'l Bank*, ⸺ Fed.Appx. ⸺, ⸺,14 CV 1056, 2014 WL 5293242, at *5 (2d Cir. Oct. 16, 2014); *Discon*, 93 F.3d at 1064 *with United States v. Applins*, 637 F.3d 59, 73–75 (2d Cir. 2011). Therefore, although the Court has already determined that Plaintiffs have not adequately pled a pattern of racketeering activity, nor the existence of an enterprise, the Court will proceed with a separate analysis of Plaintiffs' RICO conspiracy claim.

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F.Supp.3d 207, 230 (E.D.N.Y. 2014) (quoting *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002)) (internal citation omitted).

That is precisely what Plaintiffs have done here. Other than one conclusory allegation that Defendants "conspired" to commit the RICO violations, (Am. Compl. ¶ 344), Plaintiffs have alleged no facts to show specifically that Defendants had any "meeting of the minds" with respect to the alleged violations or otherwise violating the law. Nor can Plaintiffs establish a RICO conspiracy based on their conclusory and unsupported allegations that the fraudulent scheme of warranty denials allowed GM to remain out of bankruptcy for a long period of time, help other parties of the business stay afloat, and financially support other "co−conspirators." (*Id.* ¶¶ 373−75); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.) (citing *Twombly*, 550 U.S. at 555); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, 91 CV 2923, 1994 WL 88129, at *30 (S.D.N.Y. Mar. 15, 1994) ("[N]umerous district courts within this circuit have dismissed conclusory allegations of agreement as insufficient to state a RICO conspiracy claim.") (citing cases); *FD Prop. Holding*, 206 F. Supp. 2d at 373–74 (general allegation that "[e]ach of these defendants agreed to commit each of the two or more predicate acts" was inadequate to state a claim for conspiracy under § 1962(d)). Additionally, allegations about the structure of a business are insufficient to establish that each defendant consciously agreed to commit the specific predicate acts. *See Hecht*, 897 F.2d at 26 n.4 (to survive a motion to dismiss a claim for RICO conspiracy, "the complaint must allege some factual basis for a finding of a conscious agreement among the defendants"). Accordingly, Plaintiffs have failed to state a conspiracy claim under Section 1962(d).

For the reasons stated above, the Court grants HLM's, Karp's and Billard's motion to dismiss all of Plaintiffs' federal claims for failure to state a claim and/or for lack of subject matter jurisdiction.

Although this action remains stayed as against GM due to GM's bankruptcy filing (*see* Dkts. 19 & 50 at 1 n.1), the Court *sua sponte* dismisses Plaintiffs' federal claims against GM. Plaintiffs have not requested to lift the stay in light of developments in GM's bankruptcy proceedings. (*See* Dkts. 68, 69 (Plaintiffs' letters referencing *In re Motors Liquidation Co.*, 09 CV 50026, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013), which discusses the sale of GM's assets and the creation of a new GM entity)). Instead, Plaintiffs elected to name GM's "successors," including General Motors Company, as defendants to their Amended Complaint. (Am. Compl. at 1; Dkt. 59.) Plaintiffs have failed, however, to effect service on these putative defendants, despite having been afforded an extension of time in which to do so. (*See* Dkts. 54, 59, 71, 74). In any event, the Court finds that Plaintiffs' Amended Complaint fails to state a RICO claim against GM for the reasons already stated. Plaintiffs' allegations are insufficient to plausibly claim that GM engaged in a pattern of racketeering activity, participated in a RICO enterprise, or conspired to commit RICO violations. Plaintiffs also have failed to adequately allege that they suffered any distinct injury emanating from GM's alleged RICO violations. Plaintiffs' claims against GM and any putative successors accordingly are dismissed for failure to state a claim under RICO and lack of subject matter jurisdiction.

## II.  Plaintiffs' State and Common Law Claims

The Amended Complaint additionally asserts twelve causes of action under state and common law. Having determined that all federal law claims must be dismissed for lack of

subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.

### III.      Defendants' Request for Rule 11 Sanctions

Finally, Defendants request that the Court impose sanctions on Plaintiffs pursuant to Federal Rule of Civil Procedure 11[5] for improper purposes in bringing this litigation and for filing an Amended Complaint that fails to address deficiencies identified by the Court. (Dkt. 77 at 30−31). "Rule 11 sanctions are designed to deter baseless filings." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany*, 369 F.3d 91, 97 (2d Cir. 2004). Courts have found the failure to satisfy the statutory requirements of a RICO claim sanctionable activity. *Simpson v.*

---

[5] Rule 11 provides in pertinent part:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) Sanctions.
(1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

Fed. R. Civ. P. 11.

*Putnam Cnty. Nat. Bank of Carmel*, 112 F. Supp. 2d 284, 288 (S.D.N.Y. 2000) (citing cases). The deterrent value of Rule 11 is particularly important in the RICO context, as the commencement of a civil RICO action is highly likely to have a stigmatizing effect on those named as defendants. *Id.* at 288−89.

In deciding whether a pleading or other filing violates Rule 11, the Court typically applies "'an objective standard of reasonableness[.]'" *Catcove Corp. v. Heaney*, 685 F. Supp. 2d 328, 337 (E.D.N.Y. 2010) (quoting *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1257 (2d Cir. 1996)). "A party advances an objectively unreasonable claim if, at the time the party signed the pleading, 'it is patently clear that [the] claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands[.]'" *Id.* at 337 (quoting *Eastway Const. Corp. v. City of N.Y.*, 762 F.2d 243, 254 (2d Cir.1985)). "While Rule 11 applies both to represented and *pro se* litigants, the court may consider the special circumstances of litigants who are untutored in the law." *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989).

Applying these principles, the Court concludes that neither the record of proceedings thus far nor the content of the Amended Complaint justify the imposition of sanctions against Plaintiffs. Although Plaintiffs' amended pleading fails to correct the deficiencies previously identified by the Court, a review of the Amended Complaint evidences that the Plaintiffs, who are unrepresented by counsel, attempted to amend their original complaint to comply with the pleading standard required in this case. With respect to their RICO cause of action, Plaintiffs added allegations in an effort to establish each element of their claim. That these amendments ultimately were insufficient to withstand a motion to dismiss does not mean that the amendments were of such a "perfunctory, insubstantial, or cosmetic" nature as warrant the imposition of

sanctions under Rule 11.  *See, e.g.*, *Johnson v. Levy*, 10 CV 3217, 2012 WL 3580236, at *8 (E.D.N.Y. Aug. 17, 2012).  The Court further finds that Defendants failed to adequately support their claim that Plaintiffs brought this action against Billard and Karp for the improper purpose of forcing a settlement.  The Court accordingly denies Defendants' request for sanctions.

## *CONCLUSION*

For the foregoing reasons, the motion to dismiss Plaintiffs' Amended Complaint is granted for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiffs' federal claims are accordingly dismissed with prejudice. Plaintiffs' state law claims are dismissed without prejudice. Additionally, Defendants' request for sanctions and Plaintiffs' motion for leave to file a second amended complaint are both denied.  The Clerk of Court is respectfully requested to close this case.

SO ORDERED:

 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: March 25, 2015
        Brooklyn, New York